SPINKS v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court, E. D. Kentucky. March 30, 1905.)

No. 2,393.

1. INSURANCE—CONTRACT LIMITATIONS — VALIDITY — QUESTION OF GENERAL LAW—FEDERAL COURTS—STATE DECISIONS.

Whether a provision in an insurance policy that no action shall be brought after the lapse of a year from the date of insured's death is valid is one of general public policy, as to which federal courts will follow federal decisions, though in conflict with the decisions of the highest courts of the state.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. SAME.

A provision in an insurance policy that no action shall be brought after the lapse of one year from the date of insured's death is valid.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1545.]

3. POLICIES—CONSTRUCTION—FORFEITURE.

An insurance policy expressly provided that a failure to make any payment of dues for expenses or mortuary premiums, as provided, should render the contract null and void, but declared that when the policy had been in force for five years, and insured died before the expiration of ten years, within six months from the date of the maturity of dues unpaid, or within six months from the date of mortuary calls unpaid, the certificate should, nevertheless, be payable as though payment of such dues or mortuary premium had been made when due. *Held*, that such extension provision gave insured an extension of six months as to both annual dues and mortuary premiums, so that, if either was not paid within such extended period, the policy was forfeited.

S. J. Crawford, for plaintiff.
Pirtle, Trabue, Doolan & Cox, for defendant.

COCHRAN, District Judge.   The demurrer to the petition presents two questions for determination.   One is whether the provision in the policy sued on that no action shall be brought after the lapse of one year from the date of the death of the insured is valid. If it is, it is conceded that the plaintiff's right of action is barred and the demurrer should be sustained.   The Supreme Court of the United States in the case of Riddlesbarger v. Hartford Ins. Co., 7 Wall. 389, 19 L. Ed. 257, decided that such a provision in a policy of insurance is valid.   The Kentucky Court of Appeals, in the recent case of Union Central Life Ins. Co. v. Spinks, 83 S. W. 615, decided that it is not.   In view of these decisions the question is not at large with me.   The only thing I have to decide is which of them I should follow.

It is contended by the plaintiff that I should follow the Court of Appeals decision, because this is a case where the decision of the state court as to the law is binding on the federal court.   His position is in effect this:   If this case were before the Supreme Court, it would follow the Court of Appeals decision, rather than its own previous decision.   This being so, this court should do likewise.   He cites quite a number of decisions in support of this contention.   But none of them are pertinent to the question we have here.   In each one of those cases the question involved was either whether the decision of the state court that a statute of the state was not in violation of the state Constitution or as to its meaning should be followed, or whether a statute of the state was applicable to the case in hand and was binding on the federal court.   It was held that said decisions should be followed and said statutes were binding.   We have no such case here.   The validity, construction, or application of a statute is not involved here.   The sole question is whether or not the provision in question is against public policy. The Supreme Court has held that it is not.   The effect of the decision in the Riddlesbarger Case is thus stated in the subsequent case of Southern Express Company v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, by Mr. Justice Strong:

"Conditions in policies of fire insurance that no action shall be brought for the recovery of a loss unless it shall be commenced within a specified time less than the statutory period of limitation are enforced as not against legal policy."

The Kentucky Court of Appeals holds that it is.   In the case cited above Judge O'Rear said:

"We conclude that the provision in the policy that no suit should be maintained upon it, unless begun within one year from the death of the insured, was in contravention of the public policy of the state."

It is possible, however, that a decision of the state court as to what is public policy may or may not be binding upon the federal court.   The line is drawn by Mr. Justice Gray in the case of Hartford Fire Ins. Co. v. Chicago & St. P. Ry. Co., 175 U. S. 100, 20 Sup. Ct. 37, 44 L. Ed. 84, in the following extract from his opinion therein, to wit:

"Questions of public policy, as affecting the liability for acts done, or upon contracts made and to be performed, within one of the states of the Union,

when not controlled by the Constitution, laws, or treaties of the United States, or by the principles of the commercial or mercantile law, or of general jurisprudence of national or universal application, are governed by the law of the state as expressed in its own Constitution and statutes, or declared by its highest court."

The only contingency, then, in which a question of public policy arising· in a federal court is governed by the law of the state, as declared by its highest court, is when it is not controlled "by the Constitution, laws, or treaties of the United States, or by the principles of the commercial or mercantile law or of general jurisprudence of national or universal application." If a particular question as to what is public policy so arising is controlled "by the principles of the commercial or mercantile law, or of general jurisprudence of national or universal application," it is not governed by the law of the state as declared by its highest court. In that case the question involved was as to whether a provision, in a lease by a railroad company of part of its right of way, exempting it from liability for any damages to building or personal property situated thereon, resulting from the negligence of its officers or agents, or from fire communicated from its locomotive, was invalid, as against public policy. The state court had held that it was not. The federal courts, inferior and Supreme, held likewise. They so held, independent of the decision of the state court. But in the federal courts it was considered whether the particular question as to public policy was a question of general or local law, and whether, therefore, the federal courts would have been bound to follow the state decision, had it been of a different opinion on the question as to what public policy required. The Circuit Court of Appeals for the Eighth Circuit held that it was a question of general law, but Judge Caldwell dissented from this position. Hartford Fire Ins. Co. v. Chicago St. P. Ry. Co., 70 Fed. 201, 17 C. C. A. 62, 30 L. R. A. 193. The Supreme Court of the United States took Judge Caldwell's view of the·matter. Mr. Justice Gray said:

"The validity of the agreement now in controversy does not depend upon the Constitution, laws, or treaties of the United States, or upon any principle of the commercial or mercantile law or of general jurisprudence."

And again:

"Under such circumstances that decision (to wit, the state decision), being upon a question of statutory and local law, was rightly followed by the Circuit Court."

An instance where the question of public policy was one of general law may be found in the case of N. Y. C. R. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627. In that case it was held that a provision in a contract by a railroad company with a shipper of cattle, exempting the former from liability to the persons riding free to take charge of the stock for injuries caused by the negligence of its employés, was invalid as against public policy. This it so held, though it was claimed that the court had held otherwise. Mr. Justice Bradley said:

"But on a question of general commercial law the federal courts administering justice in New York have equal and co-ordinate jurisdiction with

the courts of that state: and in deciding a question of such importance to the whole country, a question on which the courts of New York have expressed such diverse views, and have so recently and with such slight preponderancy of judicial suffrage come to the conclusions that they have, we should not feel satisfied, without being able to place our decision upon grounds satisfactory to ourselves, and resting upon what we consider sound principles of law."

This brings us, then, to a determination of the question as to on which side of the line this case falls. Is the question as to whether a provision similar to the one involved herein is against public policy one of general or local law? It seems to me that it is one of general law. Statutes of limitation are universal. The principles upon which they have been enacted are universal. And it seems to me to follow that the principles involved in determining the question whether a contract providing a different limitation from that prescribed by the statute is against that policy of the statute, or otherwise against public policy, are equally universal. If this be true, the question itself is one of general jurisprudence, and not one of local law. The opinion of the Court of Appeals is not based upon any peculiar feature of the statutes of limitation of this state differentiating them from similar statutes in other jurisdictions. The reasoning upon which it is based is equally applicable to any jurisdiction. It seems to me that the question as to the validity of a provision in a policy of insurance prescribing the period within which resort may be had to the courts is as much a question of general jurisprudence as the question as to the validity of a provision therein that all disputes shall be referred to arbitration, thereby excluding the insured from all resort to the courts.

Besides this, we have pretty much the same condition of things as that referred to by Mr. Justice Bradley in relation to the position of the New York courts as to the question involved in the Lockwood Case. The decision of the Kentucky Court of Appeals in the case relied on was rendered December 9, 1904. This was after the demurrer herein had been orally presented and submitted, but before the briefs were filed. According to the decisions of the Court of Appeals of Kentucky at that time the provision in question was valid. In the cases of Owen v. Insurance Co., 87 Ky. 571, 10 S. W. 119, and Kentucky Mut. Fund Ins. Co. v. Turner, 89 Ky. 665, 13 S. W. 104, the validity of such a provision was assumed. In the cases of Lee v. Union Central Life Ins. Company (Ky.) 56 S. W. 724, and Smith v. Herd, 110 Ky. 56, 60 S. W. 841, 1121, it was expressly held that such a provision was valid. So that, if the demurrer had been disposed of at the time it was submitted, Kentucky law, as laid down by its highest court, would have required that the demurrer be sustained. I do not think, therefore, that this is a case where the federal court should follow the latest decision of the state court.

The other ground of demurrer is that all the rights under the policy sued on were forfeited in the lifetime of the insured. The policy provided for the payment by the assured annually, on the 10th day of December, of the sum of $15 as dues for expenses, and with-

in 30 days from the first week day of the months of February, April, June, August, October, and December of mortuary premiums. By clauses 2 and 3 of the policy it was expressly provided that a failure to make any of the payments stipulated for should terminate the contract and render it null and void. If there had been nothing else in the contract in relation to these payments, there could be no question but that a failure to pay either the annual dues or mortuary premiums at the times provided for would have terminated the policy absolutely. The assured had to be up with both payments in order to keep the policy alive. Payment of the annual dues as provided would not keep it alive, if the mortuary premiums were not paid as provided, and vice versa. This, however, was not all. For the benefit of members who had kept their policies alive for five years this portion of clause 8 was inserted. It is in these words:

"Provided the certificate or policy has been in force for five years from its date, in that event and before the expiration of ten years from its date death shall occur within six months from the date of maturity of dues unpaid, or within six months from the date of the mortuary calls which such member has omitted or neglected to pay, this certificate or policy shall nevertheless be payable to the beneficiary in the same manner as if payment of such dues or mortuary premium had been made when due."

The assured had kept his policy alive for five years, and not for ten, at the time of his death. He was not behind at all in his annual dues. He was more than six months behind in his mortuary premiums. Plaintiff contends that by clause 8 it is expressly provided that, if death of the assured shall occur within either six months, the policy shall be payable. Such does not seem to me to be its meaning. It should be read in connection with the other provisions of the policy. So read, the effect of it is to give the assured six months' extension of time as to both annual dues and mortuary premiums within which they may be paid. If either is not paid within such extended period, the same result follows as when either is not paid, where there is no such extension.

The demurrer is sustained.