RENDERED:  DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0754-MR

PEPPY MARTIN                                                                                        APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 21-CI-004902


JEFFREY CALLEN; TIMOTHY
BROWN; AND ASSOCIATES
IN DERMATOLOGY                                                                           APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE:  Peppy Martin appeals *pro se* from the Jefferson

Circuit Court's opinion and orders granting partial summary judgment to Jeffrey P.

Callen, Timothy Brown, and Associates in Dermatology.  Having reviewed the

record and applicable law, we affirm.

## Background

On August 25, 2021, Martin filed a complaint in Jefferson Circuit Court, alleging that medical treatment she received from the appellees on two occasions, in 2020 and 2013, left her face permanently disfigured.

Martin consulted Dr. Callen on October 22, 2020, regarding an enlarging skin lesion on her nose that had been present for three months, a lesion on her upper lip, and facial redness. Dr. Callen referred her to Dr. Brown who performed a biopsy which was positive for an ulcerated basal cell carcinoma on her nose. On November 18, 2020, Dr. Brown performed a Mohs surgical procedure to remove the carcinoma. The procedure took several hours. Martin claims no one warned her about the severity or length of the surgery, which she thought would last only fifteen minutes. According to Martin, Dr. Brown was asked by a nurse during the course of the procedure whether he was going to refer Martin to a dermatological plastic surgeon. He replied, "I can close it up." The surgery left a wound on her nose measuring 4.2 cm x 1.1 cm and was repaired with a flap. Martin contends that she was given excessive amounts of lidocaine during the procedure. When it was completed, she was pale and dizzy and lost consciousness. She was laid on the floor and her pulse and oxygen were checked. When she regained consciousness, she was unsure what had happened and thought she had fallen. When she stood up, she vomited twice. EMS was called and Martin was

taken by ambulance to a nearby hospital where she was admitted to intensive care. She remained in the hospital overnight and checked herself out the next day.

Martin claims that as a result of the surgery, her face is permanently swollen, her right nostril is destroyed, and her nose is pulled to the right. Her ability to breathe has also been affected.

In 2013, Martin consulted Dr. Callen about a lesion on her lip. Dr. Callen ordered a biopsy and Dr. Brown later performed a Mohs surgical procedure. Martin alleges that a nurse failed to remove a stitch from her lip following the procedure which remains there. At that time, Dr. Callen also recommended "blue light" treatments to reduce the redness of Martin's face. Dr. Brown conducted the treatment at a different facility, Forefront Dermatology. Martin claims the "blue light" treatment was excruciatingly painful and scalded her face. She claims her face and eyebrows later peeled from the treatment.

In her complaint, Martin asserted claims for fraud, gross negligence, negligence, conspiracy, medical malpractice, professional liability, and tortious interference with business. The complaint sought $10 million in compensatory damages and $500,000 in punitive damages.

During the course of the ensuing litigation, Martin filed a motion seeking civil forfeiture on the grounds that the appellees had exhibited a pattern of unethical and illegal behavior which violated the Federal Code for Civil Judicial

Forfeiture 18 United States Code (U.S.C.) § 981 and Kentucky Revised Statutes (KRS) 365.732. The trial court denied the motion as lacking a legal foundation.

The appellees filed a motion for partial summary judgment requesting dismissal of all claims except medical malpractice and negligence relating to the care rendered in 2020. The motion also requested the 2020 negligence claim to be dismissed on the grounds that it is subsumed by the remaining medical malpractice claim. The trial court granted the motion as to the claims against Dr. Callen. The trial court later amended its order on the appellees' motion to reflect that partial summary judgment was also granted regarding the claims against Dr. Brown and Associates in Dermatology.

In its opinion and order, the trial court held that the fraud claim dating from 2013 had to be dismissed as untimely under KRS 413.120, the five-year statute of limitations for fraud. As to the fraud claim stemming from the 2020 events, the trial court held that it had not been pled with sufficient particularity to survive summary judgment. The professional liability claim was dismissed because it was brought under KRS 411.165, which pertains to conduct by attorneys and was therefore irrelevant to Martin's case. The trial court further held that there was no evidence of unlawful behavior to support the claim of conspiracy nor had Martin identified any interest or contract interfered with by the appellees that would support the claim of tortious interference with a business. As to the claim

for gross negligence, the trial court held that Martin had failed to allege facts sufficient to support a finding that the appellees acted with wanton or reckless disregard for her life, safety, or property.  Finally, the trial court held that the negligence claim relating to the events of 2013 was untimely under KRS 413.140(1)(e), the one-year statute of limitations.

This appeal by Martin followed.

## Standard of review

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure (CR) 56.03.  The trial court is required to view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).  On the other hand, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482.  Summary judgment "expedite[s] the disposition of cases and avoid[s] unnecessary trials when no genuine issues of material fact are raised[.]" *Id.* at 480 (citations omitted).  "An appellate court need

not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

### i. Denial of the motion for civil forfeiture

Martin argues that the trial court erred in denying her motion for civil forfeiture, which she claims would have immediately resolved the entire lawsuit in her favor. Martin filed the motion alleging that the appellees had violated 18 U.S.C. § 981 and KRS 365.732 by improperly seeking to harvest her personal medical records without her knowledge. Specifically, the motion alleged that the appellees utilized mail or wire fraud to subpoena her personal medical records, hacked into the medical records of physicians with whom she had consulted and improperly sought other medical information.

Because Martin's allegations of medical negligence entitled the appellees to obtain discovery regarding her medical condition, the appellees had filed a notice of intent to obtain medical records via subpoena *duces tecum* from Dr. Brown, and from two physicians Martin had consulted about her case, Dr. Jarrod Little of University of Louisville Physicians Plastic & Reconstructive Surgery and Louisville Rhinoplasty Cosmetic Office, and Dr. Sean Maguire of the Physicians Center for Beauty. Unbeknownst to the appellees, the circuit clerk did not serve notice of the subpoena on Martin because, as a non-attorney, Martin's

name and address for service was not included in the court's electronic filing system. The appellees argued that neither the federal nor Kentucky statute was applicable to afford Martin relief in this situation.

On appeal, Martin contends that the trial court erred in failing to act in accordance with the federal statute, 18 U.S.C. § 981, which provides for the forfeiture of property to the United States government of funds involved in money laundering. The state statute upon which she relies, KRS 365.732, is entitled "Notification to affected persons of computer security breach involving their unencrypted personally identifiable information." It provides that the holders of personal information must disclose any breach of confidentiality to the owner(s) of the information. We have reviewed both statutes and see no basis for applying either of them to grant Martin relief in what is essentially a dispute about subpoenaing her medical records. The trial court did not err in denying the motion for civil forfeiture.

### ii. The claims against Dr. Brown

The motion for summary judgment was filed on behalf of all the defendants, but in its order granting partial summary judgment, the trial court referred only to Dr. Callen. Martin argues that she is unsure to what extent her claims against Dr. Brown are affected by the judgment. This question is easily resolved by reference to the trial court's subsequent order of June 23, 2022,

-7-

amending the earlier opinion and order to reflect that the motion for summary judgment brought by defendants, Timothy S. Brown, and Associates in Dermatology, was also granted. This latter order clarified that the partial summary judgment was granted as to all the appellees.

### iii. Professional liability claims

Martin argues that the trial court disregarded the corrections and clarifications she offered in her answer to the motion for partial summary judgment. Specifically, she contends that the court ignored her correction regarding the claim for professional liability under KRS 413.140(1)(f). That statute sets a one-year limitations period for several civil actions. Section (1)(f) pertains to professional services performed by real estate appraisers, real estate brokers and sales associates. Section (1)(e) pertains to actions "against a physician, surgeon, dentist, or hospital licensed pursuant to KRS Chapter 216, for negligence or malpractice[.]" KRS 413.140. Martin may be confusing the latter statute with KRS 413.120, which sets forth a five-year limitations period for numerous civil actions including "[a]n action for relief or damages on the ground of fraud or mistake[.]" KRS 413.120(11). In any event, the trial court applied the correct statutory limitations periods of one year for malpractice and five years for fraud in determining that Martin's claims relating to the 2013 events were time-barred.

### iv. Claim for tortious interference with business relations

Martin claims that the defendants tortiously interfered in her business, which she initially described as sales and meeting the public. She later specified that her business was running for Governor of Kentucky in 2023. She contends that her chance of winning that race has been diminished by the injuries she suffered at the hands of the appellees.

Tortious interference with business relations requires a plaintiff to prove the following elements: "(1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Halle v. Banner Industries of N.E., Inc.*, 453 S.W.3d 179, 187 (Ky. App. 2014).

Even if we accept that her claim that running for Governor three years after the alleged torts were committed constitutes a valid business relationship or expectancy, Martin has not alleged that the appellees knew she was planning to run for Governor; that they intentionally interfered with this plan; or that their motivation in so doing was improper. The trial court did not err in granting summary judgment on this claim which is unsupported by the factual allegations.

## v. Fraud claims

Martin's next three arguments relate to her claims for fraud. First, she contends that the 2013 fraud claim is subject to a ten-year statute of limitations under KRS 413.130(3), which provides that "[i]n an action for relief or damages for fraud or mistake, referred to in subsection (11) of KRS 413.120, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake." The statute further provides that such an action must be commenced "within ten (10) years after the time of making the contract or the perpetration of the fraud." KRS 413.130(3). But Martin does not allege that there was a delay in the discovery of her 2013 fraud claim which would justify the application of the lengthier limitations period. "The discovery rule allows for an action to accrue when the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) the injury." *Bridgefield Cas. Ins. Co., Inc. v. Yamaha Motor Mfg. Corp. of America*, 385 S.W.3d 430, 433 (Ky. App. 2012). There is no allegation that Martin was unaware of what occurred in 2013 or that there was a delayed discovery of the alleged fraud connected with the events of 2013. The trial court correctly dismissed the fraud claim stemming from the 2013 events because it was brought after the running of the five-year limitations period.

Martin's next two arguments relate to the elements of her fraud claim. CR 9.02 provides: "In all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." A claim for fraud must be established by clear and convincing evidence of the following six elements: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

Martin argues that the damage to her appearance constitutes a "material representation" sufficient to meet the first element of the claim. But the first element refers to a material misrepresentation made by the appellees to the plaintiff, not to material damages incurred by the plaintiff.

Martin also argues that she demonstrated "knowledge of falsity" in her description of Dr. Brown as neither a pathologist, anesthesiologist nor plastic surgeon. But there is no indication that Dr. Brown held himself out as or described himself as any of these in order to induce reliance on the part of Martin. The trial court did not err in granting summary judgment on the fraud claims.

### vi. Gross negligence

Martin disputes the trial court's holding that she had failed to assert disregard for the property of others sufficient to support her claim of gross negligence.

> Gross negligence is something more than the failure to exercise slight care. . . . [T]here must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful. . . . [T]here must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others.

*City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001) (internal quotation marks and citations omitted).

The trial court held that Martin had not alleged facts sufficient to prove wanton or reckless disregard for the lives, safety, or property of others on the part of the appellees. Martin argues that the condition of her face is evidence of the appellees' disregard for her property. But Martin offers no medical evidence that the condition of her face is the result of malice or wanton disregard of her rights on the part of the appellees. The trial court did not err in granting summary judgment on this claim.

### vii. Untimeliness of 2013 negligence claim

Next, Martin argues that the trial court erred in determining that her claim of negligence is time-barred when it was actually asserted within nine months. But in its order, the trial court was referring to the negligence claim stemming from the 2013 events, correctly stating "the allegations about actions in

-12-

2013 cannot be pursued beginning in 2020." It did not err in granting summary judgment on the 2013 negligence claim.

### viii. The 2013 claims

Finally, Martin contends her case will be gravely harmed and she will be disadvantaged if she is not allowed to proceed with her claims dating from 2013, as they form the groundwork for the 2020 claims. The trial court correctly held that the claims from 2013 are time-barred by the relevant statutes of limitation. Martin has not provided any legal or factual support that would justify disregarding these statutory limitations.

### Conclusion

For the foregoing reasons, the opinion and orders granting partial summary judgment to the appellees is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Peppy Martin, *pro se*
Glenview, Kentucky

BRIEF FOR APPELLEES:

Tracy S. Prewitt
Caroline K. Bruenderman
Louisville, Kentucky